In the

# United States Court of Appeals

## For the Seventh Circuit

———————

No. 05-2397

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

REGINALD J. OWENS,

*Defendant-Appellant.*

———————

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 03 CR 800—**Ruben Castillo,** *Judge.*

———————

ARGUED FEBRUARY 23, 2006—DECIDED MARCH 17, 2006

———————

Before EASTERBROOK, RIPPLE and WOOD, *Circuit Judges.*

RIPPLE, *Circuit Judge.* On September 16, 2003, a grand jury sitting in the Northern District of Illinois returned a three-count indictment, charging Reginald Owens with bank robbery in violation of 18 U.S.C. § 2113(a). He pleaded guilty to all three counts. The district court sentenced him to three concurrent terms of 60 months' imprisonment. It also imposed a restitution obligation of $7,967. Mr. Owens now appeals his sentence. For the reasons set forth in this opinion, we affirm the judgment of the district court.

**I**

**BACKGROUND**

In 2003, Mr. Owens committed three bank robberies in a four-month period at various locations in Chicago.[1] During the third robbery, Mr. Owens was pursued by security officials, apprehended and arrested.

On September 16, 2003, Mr. Owens was indicted on three counts of bank robbery. *See* 18 U.S.C. § 2113(a). Pursuant to an agreement with the Government, he pleaded guilty to all three counts on December 9, 2003. During the hearing on the guilty plea, Mr. Owens stipulated to an advisory sentencing range of 57-71 months, based on the following calculations: Beginning with a base offense level of 20, two points were added because Mr. Owens stole property from a financial institution, *see* U.S.S.G. § 2B3.1(b)(1); one point was added because the banks'

---

[1] Mr. Owens robbed Uptown National Bank on May 5, 2003; North Community Bank on July 15, 2003; and Bank One on August 18, 2003. He stole a total of $20,416—$13,725 of which was recovered by the police after Mr. Owens was caught by security officials in the course of the third robbery.

The parties dispute whether Mr. Owens used threatening notes in the course of the robberies. The Government submitted that, during each of the three robberies, Mr. Owens handed to the bank teller a note which indicated that, if the teller did not turn over the money requested, he would be killed. Mr. Owens rightly notes that only the note from the third robbery was recovered, and it contained no threat, implicit or explicit. Regardless, the resolution of this issue does not affect the disposition of this appeal. The district court thoroughly considered the matter at sentencing and determined that it was moot. Neither party raises the issue before us.

aggregate losses exceeded $10,000 but were less than $50,000, *see id.* § 2B3.1(b)(7); two points were added because, in the course of flight, persons assisting in Mr. Owens' apprehension suffered bodily injury, *see id.* § 2B3.1(b)(3)(A); and three points were added because Counts I, II and III could not be grouped as "closely related" offenses, *see id.* § 3D1.4. The parties also agreed to deduct three points for acceptance of responsibility, *see id.* § 3E1.1, resulting in a total offense level of 25. Coupled with a criminal history of I, the total offense level produced an advisory sentencing range of 57-71 months.

Mr. Owens' sentencing hearing was held on May 3, 2005. Defense counsel first argued that there existed "theoretical confusion over *Blakely* and *Booker*" and contended that the retroactive application of the "remedial opinion in *Booker* . . . creates an illogical result and raises ex post facto problems." R.67 at 15. The district court rejected these arguments:

> I am obligated as a District Court Judge . . . to follow the *Booker* remedial opinion and apply the guidelines on an advisory basis, in the first instance by calculating the relevant sentencing guideline range. So my calculation of the relevant sentencing guideline range needs to take into account the entire *Booker* decision.

*Id.* at 16.

Defense counsel also submitted that the court should impose a sentence lower than the sentence computed under the Guidelines, to account for: (1) Mr. Owens' HIV-positive status, the need for medical treatment and his shortened life expectancy, *id.* at 20-21, (2) Mr. Owens' personal problems, including his financial desperation and clinical depression, *id.* at 19, (3) Mr. Owens' remorseful nature, including his recognition that he has "made terrible choices," *id.* at 18,

and (4) the fact that the crimes were merely Class C felonies, which are "probationable," *id.* at 22. Mr. Owens personally spoke on his behalf as well, urging that he was remorseful and not "an evil person." *Id.* at 29. The district court ultimately imposed three concurrent terms of 60 months' imprisonment, as well as a restitution obligation in the amount of $7,967. *Id.* at 30-31.

## II

## DISCUSSION

### A.

Mr. Owens contends that the district court's application of various sentencing enhancements violated the Ex Post Facto Clause. He submits that, at the time of his criminal conduct, a judge was not permitted to increase the maximum sentencing range on the basis of facts not charged in the indictment or proven to a jury beyond a reasonable doubt; therefore, he reasons, retroactive application of *United States v. Booker*, 543 U.S. 220 (2005), permitting the judge to apply enhancements premised on judge-found facts, violates his Fifth Amendment rights.

We previously have rejected this contention. In *United States v. Jamison*, 416 F.3d 538 (7th Cir. 2005), for example, we recognized that a defendant has a right to fair notice of criminal penalties; nevertheless, the retroactive application of the remedial portion of *Booker*, we held, does not violate either due process or ex post facto guarantees:

> Jamison essentially seeks a sentence that comports with the Sixth Amendment requirements of *Booker*, but wants to avoid the possibility of a higher sentence under the remedial holding of *Booker*. Unfortunately for Jamison, the Supreme Court clearly instructed

that both holdings should be applied to all cases on direct review . . . . [Moreover,] Jamison knew that he was committing a crime at the time he distributed cocaine base. The new judicial interpretation of the law brought about by *Booker* affects his punishment, not whether his conduct was innocent. Distributing cocaine base was not made a crime by the Court's decision in *Booker.* Jamison also had fair warning that distributing cocaine base was punishable by a prison term of up to twenty years, as spelled out in the United States Code. Jamison had sufficient warning of the possible consequences of his actions, and his sentence does not run afoul of any of the core concepts discussed in *Rogers* [*v. Tennessee,* 532 U.S. 451 (2001)].

*Id.* at 539. We reiterated this holding and rejected a claim similar to the claim made by Mr. Owens in *United States v. Cross*, 430 F.3d 406, 409-10 (7th Cir. 2005) (holding that the retroactive application of *Booker* to a crime that was committed before 2005 does not violate the Ex Post Facto Clause, given that the defendant had fair warning of statutory maximums).

Mr. Owens does not attempt to distinguish *Jamison* or *Cross,* nor could he. He was sentenced to 60 months' imprisonment, a term well within the statutory maximum for three counts of bank robbery. *See* 18 U.S.C. § 2113(a) (imposing a statutory maximum of twenty years' imprisonment for each violation). Indeed, he was warned at his change-of-plea hearing that the maximum term of imprisonment for which he was eligible was 20 years' imprisonment on each count, totaling 60 years' imprisonment. Therefore, we must conclude that Mr. Owens had "fair warning" of the "possible consequences of his actions," as "spelled out in the United States Code." *Jamison*,

416 F.3d at 539.

## B.

Mr. Owens also submits that the district court erred in applying sentencing enhancements premised on judge-found facts. In his view, the "statutory maximum" for his crimes should be defined as the high end of the guidelines sentencing range as computed "without any additional findings" by the judge. Appellant's Br. at 29-30. He continues that, because the district court found additional facts and then used these facts to increase the advisory sentencing range from 33-41 months to 57-71 months, the resulting 60-month term violates his Sixth Amendment rights, as recognized in *Blakely*. *See Blakely v. Washington*, 542 U.S. 296 (2004).

Mr. Owens' position is without merit.[2] *Booker* clearly permits a district court to grant a sentencing enhancement based on facts not charged in the indictment, not proven to a jury beyond a reasonable doubt or not admitted by the defendant. 543 U.S. at 226-27; *see also United States v. Robinson*, 435 F.3d 699, 701-02 (7th Cir. 2006) ("True, *Booker* holds that judges may not find facts that increase the maximum punishment and that a mandatory sentencing guidelines scheme violates that rule. But *Booker* resolved the

---

[2] Contrary to Mr. Owens' contention, at the time that Mr. Owens committed his crimes, *Blakely v. Washington*, 542 U.S. 296 (2004), had not yet been decided. Therefore, Mr. Owens cannot claim a legitimate expectation, premised on *Blakely*'s holding, that facts forming the basis of the sentencing enhancements imposed would be found beyond a reasonable doubt by a jury, rather than by a judge.

problem by making the guidelines advisory; judicial fact-finding in sentencing is acceptable because the guidelines are now nonbinding."). Our post-*Booker* cases have explained the two steps in reviewing sentences now that the Sentencing Guidelines are advisory: First, we examine whether the district court calculated the appropriate advisory sentencing range; and second, we review whether the sentence imposed was reasonable, by reference to the sentencing factors specified in 18 U.S.C. § 3553(a). *See id.* at 700-01.

Here, the district court properly calculated the advisory guidelines range,[3] as well as appropriately recognized the Sentencing Guidelines as advisory. Therefore, the district court correctly applied the sentencing enhancements, and we review the sentence only for reasonableness.

## C.

Mr. Owens next challenges his sentence as unreasonable. He contends that the district court failed to consider applicable § 3553(a) factors. He urges specifically that his crimes were nonviolent, that he cooperated fully with the investigation and that probation would have been a viable alternative to imprisonment.

In *United States v. Mykytiuk*, 415 F.3d 606, 608 (7th Cir. 2005), we recognized that sentences that fall within the advisory guidelines range—like Mr. Owens'—are entitled to

---

[3] Mr. Owens did not object to those calculations or to the application of enhancements at either the change-of-plea hearing or the sentencing hearing, nor does he raise such an objection on appeal.

a rebuttable presumption of reasonableness. To rebut that presumption, Mr. Owens must establish that, when viewed in light of the factors specified in § 3553(a), his sentence is unreasonable. *Id.*

Mr. Owens is correct that the district court did not discuss at-length each and every sentencing factor specified in § 3553(a). However, a fair reading of the sentencing transcript makes clear that the court did consider all of the information presented by the parties. Indeed, the court noted specifically that it had received letters on behalf of the defendant and that it would consider them and give them the weight that the court deemed appropriate. The court also considered the defendant's background and the nature of the offenses and remarked:

> You strike me as an intelligent person . . . . [Y]ou have no criminal history. But then we look at the offenses here, I have to take into consideration that you committed three robberies within four months. And I understand that you came forward. You [sic] motivated to come clean. That is to your credit. And I will certainly take that into consideration.
>
> But I also see that you worked at two different banks. And there is no such thing as a nonviolent robbery because there are just too many wild cards when you go up to a teller, with whatever type of note, and start demanding money. You don't know what's going to happen. That teller drops dead of a heart attack; you are on the line for a felony murder offense. If some group of security guards or other involved citizens decide to take certain action to stop the robbery and someone gets hurt in the robbery, it quickly gets out of control.
>
> In other words, what I am telling you is, the minute you decide to take money from an institution like

this, things just quickly get out of control. The fact that you did that three times within four months leads me to calculate when I consider all the factors under federal law, under [§] 3553, that it would not be appropriate to sentence you to anything less than a sentencing guidelines sentence.

R.67 at 29-30.

We believe that this explanation is sufficient to meet the standards set forth in our post-*Booker* decisions. We previously have held that a judge need not apply § 3553(a) in a checklist fashion or rehearse on the record all considerations listed therein; rather, an "adequate statement" of the judge's justifications for the sentence imposed is sufficient, so long as this justification is "consistent with section 3553(a)." *United States v. Dean*, 414 F.3d 725, 729 (7th Cir. 2005).

The record reflects that the district court met this standard. It first discussed the nature of Mr. Owens' offenses, noting that all three robberies were committed within a short, four-month time frame. It emphasized that, although not overtly violent, the robberies were nevertheless dangerous and unpredictable. R.67 at 30 (noting that a bank teller could have a heart attack, or security personnel could be harmed in the course of attempting to stop the robbery). These observations were directed to considerations included in § 3553(a). *See* 18 U.S.C. § 3553(a)(1) (specifying that the court must consider "the nature and circumstances of the offense"). The court also weighed "the history and characteristics of the defendant," as required by § 3553(a)(2). It recognized that Mr. Owens had no criminal history and that he immediately assumed responsibility for his crimes. But, according to the district court, these facts were made less relevant by the nature and seriousness of the

offense, and by the fact that Mr. Owens' prior experience working at a bank placed him on notice of the possible implications of his conduct, including that "things [could] just quickly get out of control." R.67 at 30. The fact-specific balancing of these factors is entitled to great deference by this court. *United States v. Newsom*, 428 F.3d 685, 688 (7th Cir. 2005).

Additionally, the court noted that Mr. Owens had accepted responsibility for his actions and exhibited remorse. It also assured him that the court considered his medical condition. Nevertheless, it found that, when one weighs these facts against the serious nature of the offenses and the short time frame in which they were committed, a lengthy term of imprisonment was desirable. *See* R.67 at 30.

The district court's sentence—five years' imprisonment for the commission of *three* separate bank robberies in a four-month period—quite clearly assures us that the court took into consideration all matters in extenuation and mitigation. For each of these dangerous acts, the district court imposed a sentence near the low end of the advisory range of 57-71 months; the court then directed that the three 60-month term sentences run concurrently. A fair reading of the entire sentencing proceeding makes clear that the court thoughtfully considered all the pertinent circumstances.

## Conclusion

The district court committed no reversible error in the imposition of the sentence and the sentence is certainly reasonable. Accordingly, we affirm the judgment of the district court.

AFFIRMED

A true Copy:

Teste:

_____

*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*