In the

# United States Court of Appeals

## For the Seventh Circuit

No. 08-2357

UNITED STATES OF AMERICA,

*Plaintiff-Appellee*,

*v.*

BOK YOUNG,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Northern District of Indiana, Hammond Division.
No. 05 CR 50-3—**Rudy Lozano**, *Judge*.

ARGUED FEBRUARY 27, 2009—DECIDED DECEMBER 23, 2009

Before MANION, ROVNER, and TINDER, *Circuit Judges*.

ROVNER, *Circuit Judge*. Bok Young helped to run a day spa in Highland, Indiana, at which she and other workers provided sexual massages to spa customers. She was arrested when the spa was raided by local and federal agents. Young eventually pleaded guilty to conspiring to use the facilities of interstate commerce to facilitate prostitution, *see* 18 U.S.C. §§ 371 and 1952(a)(3), and the district court ordered her to serve a prison term

of eighteen months, the minimum term called for by the Sentencing Guidelines. Young appeals, contending that the district court made two errors in calculating her Guidelines range: characterizing Young's role in the offense as that of a manager or supervisor, *see* U.S.S.G. § 3B1.1(b) and (c), and treating Young's co-workers as victims whom she had enticed to engage in prohibited sexual conduct, *see* U.S.S.G. § 2G1.1(d). Young also argues that the court failed to give meaningful attention to the mitigating factors she cited as a basis for a lower sentence, and that the sentence imposed by the court is unreasonable. We affirm.

## I.

The Barley Spa in Highland, Indiana was one of four day spas in Highland and Dyer, Indiana that came under investigation in the autumn of 2005 by the police departments of those two towns along with the U.S. Internal Revenue Service, the Federal Bureau of Investigation, and Immigration and Customs Enforcement. Sun Cha Thompson owned three of the four spas, including the Barley Spa. On February 22, 2006, agents executed search warrants at all four spas. Present at the Barley Spa when agents searched it were Young and two other employees: Pok Sun Palmer, who cleaned the spa and cooked meals for its customers, and Soon Ja Kim, who provided massages. Palmer and Kim had been working at the spa for a matter of weeks. Young had been working there for approximately six months.

The Barley Spa offered its customers standard massages, but for customers willing to pay a bit more, its

masseuses were willing to provide masturbation. Young would later state at her change-of-plea hearing that customers were charged an entry fee of $50 for 30 minutes or $70 for an hour of nonsexual massage. Customers interested in a sexual massage typically paid an extra "tip" of between $20 to $60; the amount of the tip, if any, was up to the customer. The masseuses kept whatever tips their clients paid them for their massages and were not otherwise paid wages by the spa. The spa in turn made its money from the fees that customers paid to enter the spa. Young estimated that at least seventy-five percent of the spa's customers were interested in sexual massages.

Thompson had hired Young in August of 2005 to handle the spa's day-to-day operations, including its bookkeeping. Young was to pay Thompson $1,000 per month out of the spa's receipts; from the remainder, she was to pay herself a salary of $3,000 per month (although Young would later say that the proceeds were never sufficient to pay herself that much). Following Young's engagement, the spa's accountant wrote a memorandum indicating that Young would be replacing Thompson as the individual "run[ning] things" at the spa. R. 244 at 33. Within a couple of months, Thompson was no longer directly involved with the daily operation of the spa and visited the premises no more than once a week. Young collected the daily proceeds, paid the spa's bills, made sure that the ledger of the spa's business was in order for Thompson's occasional review, took out advertisements, paid the cook her daily wages, hired new employees, bought groceries for the employees (who

lived at the spa), and kept Thompson apprised of any personnel issues. Young looked into Palmer's immigration status before hiring her as the spa's cook and housekeeper shortly before the raid, and when Palmer began work, it was Young who showed her around the spa and instructed her on her responsibilities. Like the spa's other employees (excepting Palmer), Young did provide sexual massages to the spa's clients. But Young was the sole employee charged with managing the spa's day-to-day operations. There was also evidence that when customers arrived, Young decided which of the other masseuses would provide them with services. Kim, a masseuse who was present at the time of the raid, would later state that Young was "in control of everything" at the spa. R. 244 at 72.

In view of Young's responsibilities, the district court found that she qualified as a manager or supervisor of the criminal activity that took place at the spa, thus triggering a two-level increase in her sentencing level pursuant to section 3B1.1(c) of the Guidelines. The court noted, among other factors, that Thompson's degree of involvement with the spa decreased after Young was hired, that Young received a salary in contrast to the other women who provided sexual massages and were compensated by the "tips" they received for those services, that she wrote checks on behalf of the spa (including her own paycheck), and that Young described her own role as that of manager in paperwork she completed for an advertisement in a telephone directory and during an interview that agents conducted in the immediate aftermath of the raid on the spa. R. 293 at 12-18. The court added that even

if Young did not qualify as a manager or supervisor of the other participants in the spa's criminal activity, she did "exercise[ ] management responsibility over the property[,] assets[,] and activities of the criminal organization," which the Sentencing Commission's advisory notes recognize as a basis for a longer sentence. R. 293 at 18; *see* § 3B1.1, comment. (n.2)

The court concluded that a second, "pseudo count" enhancement was warranted based on Young's role in enticing the other women at the spa to engage in illegal sexual conduct. *See* § 2G1.1(d). When a defendant has been convicted of an offense involving the promotion of commercial sex acts or other prohibited sexual conduct and multiple victims, section 2G1.1(d) instructs the court to calculate the defendant's offense level as if the defendant had been convicted of a separate count for each victim. Because offenses of this nature are not grouped together for sentencing purposes, *see* U.S.S.G. §§ 2G1.1, comment. (n.5) & 3D1.2, additional counts of conviction trigger an increase in the defendant's combined offense level, *see* U.S.S.G. § 3D1.4. There were multiple masseuses who worked at the Barley Spa during Young's tenure, and because their sole source of pay was the "tips" they received for sexual massages, the court treated them as victims of the offense in the sense that they were "enticed" into engaging in commercial sex acts. Based on those victims, the court deemed Young to have been convicted of one additional "pseudo" count, which resulted in a two-level increase in her offense level. R. 293 at 20-22.

Young's adjusted offense level, together with her lack of a prior criminal record, called for a sentence in the range of 18 to 24 months. In a written sentencing memorandum, Young's counsel highlighted a variety of mitigating factors and asked for a "minimal sentence." R. 221 at 6. At the final sentencing hearing, Young's counsel urged the court to impose a below-Guidelines sentence of probation, noting that Thompson, the owner of the spa, had received a term of twenty-seven months and Thompson's silent partner and investor had received probation, that Young had been on work release, which he characterized as "basically home arrest" for the preceding two years, R. 293 at 31, and that Young would not be aided by going to prison. R. 293 at 26-32. The district court did not specifically address the various mitigating factors that Young's counsel had cited. However, the court did acknowledge its obligation to consider the sentencing factors set forth in 18 U.S.C. § 3553(a) in addition to the Guidelines in deciding "what a reasonable sentence would be." R. 293 at 37.

The court then explained why it had concluded that a sentence at the low end of the Guidelines range was appropriate for Young:

> [I]n this case I think, if anything, the [G]uidelines are light, but I think they're light, Ms. Young, in large part because you're given the benefit of the doubt with regards to several portions of the [G]uidelines. But when there was any question that I felt to be close enough, I would give you the benefit of the doubt. When there was a question regarding an en-

hancement, although in some cases I felt that it might be justified, again, I gave you the benefit of the doubt.

When I first sat down to consider a sentence in this case, I thought a sentence at 24 months would be a reasonable sentence. In listening to your attorney, I think that I should relook at that number. I have looked at the probation officer's recommendations and the comments from the Government. I have rethought that sentence, and then I looked at the Guidelines again, and I have decided upon the following sentence . . . .

R. 293 at 37. The court proceeded to sentence Young to a term of eighteen months.

## II.

A. Enhancement for Leadership Role in the Offense

For offenses involving multiple participants, section 3B1.1 of the Sentencing Guidelines provides for aggravating-role enhancements based on the number of participants involved in the criminal activity and the defendant's relative responsibility for committing the offense. The guideline specifies (a) a four-level enhancement for a defendant who qualifies as an "organizer or leader" of criminal activity involving five or more participants or that was otherwise extensive, (b) a three-level enhancement for a defendant who qualifies as a "supervisor or manager" of criminal activity involving five or more participants or that was otherwise extensive, and (c) a two-level enhancement for a defendant who qualifies

as an organizer, leader, manager, or supervisor of criminal activity involving fewer participants and that was not otherwise extensive. The district court found that Young constituted a supervisor or manager of the criminal activity that transpired at the Barley Spa, but, because it assumed that the crime involved less than five participants and was not otherwise extensive, it increased Young's offense level by two rather than three levels. The court's finding that a defendant qualified as a manager or supervisor of criminal activity is a factual determination that we review for clear error. *E.g.*, *United States v. Watts*, 535 F.3d 650, 660 (7th Cir.), *cert. denied*, 129 S. Ct. 475 (2008).

Young concedes that one can take "snippets" from the record that support the district court's finding but insists that "the evidence, as a whole, does not establish a basis for this enhancement[,] for the context does not demonstrate exertion[ ] of control over others, as contemplated by the [guideline]." Young Br. 19. She points out that in order to qualify as a manager or supervisor, a defendant must, at a minimum have "some real and direct influence" upon at least one other participant in the crime in a way that furthers the criminal activity. *See United States v. Mankiewicz*, 122 F.3d 399, 405 (7th Cir. 1997) (quoting *United States v. Mustread*, 42 F.3d 1097, 1103 (7th Cir. 1994)). She emphasizes that this is not a case of "white slavery" in which the spa's workers were coerced into providing sexual services to customers. Although Young had administrative responsibilities that other workers at the spa did not, she characterizes her role as that of a bookkeeper who collected the spa's proceeds and paid

its bills under the direction of the spa's owner, Thompson, and who had no meaningful influence over the activities of any other employee. This was a small operation in which each employee had her own duties, Young argues, and her duties did not involve the direction or control of the other workers.

Having reviewed the record, we are satisfied that the evidence supports, although it may not compel, the finding that Young was a manager or supervisor of the spa's criminal activity. One can readily infer from the record that Young acted as the owner's proxy in overseeing the spa's day-to-day affairs: she collected the proceeds, paid the cook/housekeeper her daily wage, was responsible for the ledger, and paid the bills. She reported to Thompson when there were problems with other employees, including, for example, an employee's failure to report for work (which resulted in Thompson firing the absent worker). There was evidence that Young hired employees, including Palmer, the cook/housekeeper. There was also evidence (which although disputed, the district court credited) that Young decided, upon the arrival of a customer, which of her co-workers would provide a massage to the customer. R. 244 at 17; R. 293 at 13. Young may not have controlled her co-workers in the sense that she had the power to dictate their actions, but such control is not the sine qua non of a leadership role; one may still qualify as a manager or supervisor if she orchestrates or coordinates the activities of other participants in the crime. *United States v. Martinez*, 520 F.3d 749, 752 (7th Cir.), *cert. denied*, 129 S. Ct. 300 (2008); *see also United States v. Gonzalez-Mendoza*, 584 F.3d 726, 728-

29 (7th Cir. 2009). The evidence that Young hired workers, assigned them to customers, handled the spa's finances, and acted as the owner's representative supports the district court's finding that she played a more responsible role in the crime than did the other spa employees. There was no clear error in the district court's determination that she qualified as a manager or supervisor.

B.  Pseudo-Count Enhancement for Commercial Sex Acts Involving Multiple Victims

Young conspired to use the facilities of interstate commerce to facilitate prostitution. Her offense was thus one involving commercial sex acts, i.e., those for which payment is rendered. *See* U.S.S.G. § 2G1.1, comment. (n.1), and 18 U.S.C. § 1591(e)(3). Where such an offense involves more than one victim, section 2G1.1(d)(1) of the Guidelines instructs the court to calculate the offense level "as if the promoting of a commercial sex act . . . in respect to each victim had been contained in a separate count of conviction." Pursuant to Application Note 5 of the guideline, any person who is "transported, persuaded, induced, enticed, or coerced to engage in . . . a commercial sex act . . . is to be treated as a separate victim." *Id.*, comment (n.5). The district court found that during Young's tenure at the spa, there were "at least four and likely seven to eight" women other than Young who provided sexual services to customers, R. 293 at 19, and each of those women constituted a victim for purposes of the Guideline, R. 293 at 19-20. The court also found that

Young, in her role as the spa's manager, had effectively "enticed" these women into performing commercial sex acts by confining their income to the "tips" they received for providing sexual massages. R. 293 at 21-22. The court therefore calculated Young's offense level as if she had been convicted of one "pseudo count" of promoting a commercial sex act in addition to the one actual count of conviction. The fictitious second count resulted in a two-level increase in Young's offense level pursuant to section 3D1.4. The district court's findings that the spa's masseuses were victims and that Young was responsible for enticing them into performing commercial sex acts are factual in nature, and we review them for clear error. *See United States v. Julian*, 427 F.3d 471, 488-89 (7th Cir. 2005).

Young protests the enhancement, contending that in the absence of evidence that she coerced the masseuses into engaging in sexual activity or controlled their method of payment, it was improper to increase her offense level simply because the masseuses were given a financial incentive to give sexual massages. Young points out that Kim testified that she (Kim) kept not only the tips they received for sexual massages, but also one-half of the entrance fees charged to her customers. Consequently, the tips for sexual gratification were not necessarily the masseuses' sole source of payment. Young herself also testified that it was common for spas not to pay masseuses a wage and instead compensate them from the fees they collected from customers. She adds that it was Thompson and not she who established the manner and amount of payment for massages.

The district court did not clearly err in finding that Young was responsible for enticing the spa's masseuses into performing sexual massages. That Young did not coerce the masseuses is, as Young all but concedes, beside the point, as the guideline expressly reaches those who "entice" others into performing commercial sex acts as well as those who persuade, induce *or* coerce others into doing so. And the evidence supports the court's finding that the women were enticed to engage in sexual massages. Even if the "tips" that the masseuses kept were not the sole source of their compensation, they nonetheless amounted to a substantial portion of that compensation. And given that seventy-five percent or more of the spa's customers were seeking sexual gratification, it is doubtful that a masseuse who refused to provide that gratification would have lasted long at the spa. This was enough to establish that the masseuses were enticed into engaging in sexual activity for pay, and thus to support the finding that the masseuses were victims for purposes of the Guideline. Young's role as a manager or supervisor of the spa's criminal activity in turn supports the court's finding that she was responsible for the enticement. Granted, Young did not set up the spa's fee structure and method of compensating the masseuses. But, as the individual who for six months assigned masseuses to customers, collected the spa's proceeds, made sure that the spa's business was accurately documented in a ledger for Thompson, and kept the spa running on a day-to-day basis, Young played a significant role in perpetuating both the illicit activity taking place at the spa and the means by which

the masseuses were compensated for that activity. The district court could reasonably infer that Young herself enticed the masseuses to engage in commercial sexual activity.

C.  Reasonableness of Young's Sentence

In the wake of the Supreme Court's watershed decision in *United States v. Booker*, 543 U.S. 220, 125 S. Ct. 738 (2005), a district court has an obligation to impose a sentence that is reasonable in light of the sentencing criteria set forth in 18 U.S.C. § 3553(a). *See United States v. Dean*, 414 F.3d 725, 730-31 (7th Cir. 2005); *see also Gall v. United States*, 552 U.S. 38, 49-50, 128 S. Ct. 586, 596-97 (2007). Although it is no longer bound by the Sentencing Guidelines, the court still must consult the Guidelines in arriving at a reasonable sentence, *see Kimbrough v. United States*, 552 U.S. 85, 108, 128 S. Ct. 558, 574 (2007) ("district courts must treat the Guidelines as 'the starting point and the initial benchmark'") (quoting *Gall*, 552 U.S. at 49, 128 S. Ct. at 596), and when the court selects a sentence that falls within the properly-calculated Guidelines range, we shall presume that sentence is reasonable. *United States v. Mykytiuk*, 415 F.3d 606, 608 (7th Cir. 2005); *see Rita v. United States*, 551 U.S. 338, 127 S. Ct. 2456 (2007) "But the defendant must be given an opportunity to draw the judge's attention to any factor listed in section 3553(a) that might warrant a sentence different from the guidelines sentence, for it is possible for such a variant sentence to be reasonable and thus within the sentencing judge's discretion under the

new regime in which the guidelines, being advisory, can be trumped by section 3553(a), which as we have stressed is mandatory." *Dean*, 414 F.3d at 730-31.

At oral argument, Young's counsel asserted that Young received "a pre-*Booker* sentence in a post-*Booker* world." Young's premise is not that the district court mistakenly treated the Guidelines as binding, but rather that the court, in neglecting to explicitly address the mitigating factors that her counsel had cited in support of a below-Guidelines sentence, did not fully comply with its obligation to determine a reasonable sentence in view of section 3553(a)'s broad sentencing criteria. *See United States v. Villegas-Miranda*, 579 F.3d 798, 801-02 (7th Cir. 2009).

This would be true as to any principal arguments that were "not so weak as to not merit discussion," *id.* (quoting *United States v. Cunningham*, 429 F.3d 673, 679 (7th Cir. 2005)), or in other words, arguments that were "substantial," *United States v. Martinez*, *supra*, 520 F.3d at 753. But in addition to arguments that clearly lack merit, *see, e.g.*, *United States v. Miranda*, 505 F.3d 785, 792 (7th Cir. 2007) (quoting *Cunningham*, 429 F.3d at 678), a sentencing judge may reject without discussion "stock arguments" that are made as a matter of routine. *Martinez*, 520 F.3d at 753. A number of Young's arguments appear to fall into the latter category: for example, that she is a divorced mother of two, had no prior criminal history, and was restricted to home and work prior to trial. *See id.* More to the point, Young has not attempted to explain which of her arguments, if any, had substantial merit

and why, or even to identify which of them were her principal arguments. *See Villegas-Martinez*, 579 F.3d at 801 (sentencing court need only respond to defendant's principal arguments, not every "pithy" argument she might raise). In fact, Young has not individually addressed any of the mitigating factors she raised below; she simply asserts that none of them was frivolous, leaving it to us to sort through them all to determine which might have sufficient merit to demand the district court's explicit attention. That is not our role. *See Mykytiuk*, 415 F.3d at 608 (defendant can rebut presumption of reasonableness attending within-Guidelines sentence only by showing sentence is unreasonable when measured against section 3553(a) factors). We add that none of the factors she argued to the district court strikes us as sufficiently meritorious on its face to have demanded explicit comment by the court.

The district court complied with its obligations in sentencing Young. The court referenced the section 3553(a) factors, *see United States v. Williams*, 425 F.3d 478, 480 (7th Cir. 2005) (judge need not make findings as to each of statutory factors so long as record indicates it gave them meaningful consideration), and indicated both that it had considered the arguments advanced by Young's counsel and that it, had, in fact, been persuaded to reduce the sentence from the top to the bottom of the Guidelines range. The court articulated a rationale for not imposing a sentence below the range, as Young had asked, explaining that it viewed the Guidelines as "light" with respect to Young's offense and that Young had received a number of breaks in the manner in which the

Guidelines had been applied.[1] *See United States v. Laufle*, 433 F.3d 981, 987 (7th Cir. 2006) ("A concise statement of the factors that caused the judge to arrive at a particular sentence, consistent with section 3553(a), will normally suffice."); *see also Rita*, 551 U.S. at 356, 127 S. Ct. at 2468 ("The sentencing judge should set forth enough to satisfy the appellate court that he has considered the parties' arguments and has a reasoned basis for exercising his own legal decisionmaking authority."). The Guidelines range was properly calculated, and the sentence imposed fell within that range. As such, it is presumptively reasonable, and Young has not rebutted that presumption.

## III.

The district court properly determined Young's offense level, and although the court did not expressly address the factors she cited in support of a below-Guidelines sentence, Young has not shown which of those factors, if any, was sufficiently meritorious to require explicit discussion by the court or to rebut the presumption of rea-

---

[1] Those breaks included the district court's decision to treat the criminal activity that Young supervised or managed as involving fewer than five participants and thus to impose a two-level rather than a three-level enhancement for her aggravating role in the offense, *see* U.S.S.G. § 3B1.1(b) and (c), and the court's decision to deem Young as having been convicted of only one pseudo count despite the multiple victims involved, *see* U.S.S.G. § 2G1.1(d)(1) & comment. (n.5).

sonableness that we attach to the within-Guidelines sentence that the court imposed. We therefore AFFIRM the sentence.