NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted August 29, 2013
Decided August 29, 2013

**Before**

RICHARD A. POSNER, *Circuit Judge*

ILANA DIAMOND ROVNER, *Circuit Judge*

JOHN DANIEL TINDER, *Circuit Judge*

No. 13-1397

| | |
|---|---|
| UNITED STATES OF AMERICA, *Plaintiff-Appellee,* | Appeal from the United States District Court for the Central District of Illinois. |
| *v.* | No. 12-20027-001 |
| DARIN TYREE DAVENPORT, *Defendant-Appellant.* | Michael P. McCuskey, *Judge.* |

**O R D E R**

In April 2012 police responded to a report of a gunshot at an apartment building in Danville, Illinois, where Darin Davenport was living. The citizen who called the police said that two people in a Chevrolet Blazer were arguing after the gunshot. When officers arrived at the apartment building, they stopped a Blazer driven by Davenport. He jumped from the vehicle and fled, leaving his girlfriend behind. Davenport soon was caught. When the arresting officers returned with him to their squad car, they were met by Anthony Keys, who accused Davenport of firing the shot after an argument outside Davenport's apartment. Keys told the officers that he was broke and unable to pay Davenport what he owed for drugs; Davenport had reacted to this news by

slugging Keys with a handgun and then firing a round as Keys ran away. Keys only heard the shot, but a friend with him outside the apartment saw Davenport fire into the air. And Davenport's girlfriend, who stayed inside the apartment while Davenport was outdoors with Keys, told the officers that she heard a scuffle before the gunshot. She also told police that, when she was in the Blazer with Davenport a short time later, he tossed the gun out the window when he spotted a squad car. Police recovered the revolver and a spent shell casing. Davenport was taken to the police station, where he insisted that he "wasn't trying to shoot" Keys.

Davenport, who had prior felony convictions for residential burglary, 720 ILCS 5/19-3(a), and distribution of a look-alike substance, *id*. § 570/404(b), pleaded guilty to possession of a firearm by a felon, 18 U.S.C. § 922(g)(1). The district court calculated a guidelines imprisonment range of 84 to 105 months and sentenced Davenport to 96 months. Davenport filed a notice of appeal, but his appointed lawyer asserts that the possible appellate claims are frivolous and seeks to withdraw under *Anders v. California*, 386 U.S. 738, 744 (1967). Davenport has not accepted our invitation to comment on counsel's motion. *See* CIR. R. 51(b). We confine our review to the potential issues identified in counsel's facially adequate brief. *See United States v. Schuh*, 289 F.3d 968, 973–74 (7th Cir. 2002).

Davenport has told counsel that he does not want to challenge his guilty plea, and thus counsel properly forgoes discussing the adequacy of the plea colloquy or the voluntariness of the plea. *See United States v. Konczak*, 683 F.3d 348, 349 (7th Cir. 2012); *United States v. Knox*, 287 F.3d 667, 670–71 (7th Cir. 2002).

Counsel does consider whether Davenport could challenge the four-level upward adjustment he received for possessing the gun in connection with another felony offense. *See* U.S.S.G. § 2K2.1(b)(6)(B). The probation officer included this increase because Davenport's conduct as described by Keys and the two other witnesses (firing a gun into the air in a residential area with people nearby) satisfied the statutory elements of reckless discharge of a firearm. *See* 720 ILCS 5/24-1.5(a); *People v. Collins*, 824 N.E.2d 262, 264–68 (Ill. 2005); *People v. Watkins*, 837 N.E.2d 943, 944–46 (Ill. App. Ct. 2005). Davenport objected to the increase because, in his view, the hearsay accounts from these witnesses are unreliable (their stories were introduced through the testimony of a police officer and transcripts of grand jury testimony from Keys and the girlfriend). These witnesses are unreliable, Davenport asserted, because Keys and the other man were "drug dealers" and his girlfriend, who had dated drug dealers, was a "woman of ill repute."

Appellate counsel reasons that this objection was appropriately rejected because, as the district court recognized, the witnesses' accounts not only are corroborated, but essentially made unnecessary, by the spent shell casing and Davenport's tacit admission that he fired the gun even if he wasn't "trying to shoot" Keys. We agree with counsel's assessment, yet Davenport's objection to the reliability of the hearsay statements would not have been stronger without the corroborating evidence. For one, the record does not support the characterization of Keys and his friend as drug "dealers" rather than users; Keys said he and Scott had purchased drugs from Davenport, but the amounts and reasons for these purchases are not disclosed in the record. What is more, we have rejected Davenport's premise that drug dealers and users (and, by extension, their girlfriends) are unworthy of belief. *See United States v. Stevenson*, 680 F.3d 854, 858 (7th Cir. 2012); *Kunz v. DeFelice*, 538 F.3d 667, 677 (7th Cir. 2008); *United States v. Cross*, 430 F.3d 406, 411 (7th Cir. 2005). Thus, the potential claim about the upward adjustment would be frivolous.

Counsel does not perceive any other argument about the guidelines calculations and turns to whether Davenport could claim that the district court ignored his arguments in mitigation. Counsel represents that Davenport argued for leniency on the grounds that his "criminal history was relatively low and he had not fathered any children out of wedlock."

In fact, the first of these contentions was not presented to the district court, so the judge cannot be faulted for not addressing it. At sentencing Davenport's lawyer noted that the defendant is in criminal history category IV and not the highest category of VI, but that observation hardly constitutes an argument in mitigation. Davenport's imprisonment range would have risen if he was in Category VI (the low end would have jumped from 84 months to 110), and his lawyer did not suggest that Category IV exaggerates the defendant's past crimes. At all events, the district judge discussed Davenport's criminal history at length when concluding that a sentence at the top of the guidelines range was unwarranted. *See United States v. Trujillo-Castillon*, 692 F.3d 575, 578 (7th Cir. 2012).

In contrast, Davenport's lawyer did argue at sentencing that leniency should be shown because the defendant had not fathered any children out of wedlock. Appellate counsel cannot think of a reason why this fact is mitigating, and neither can we. *See United States v. Barahona–Montenegro*, 565 F.3d 980, 985 (6th Cir. 2009) (characterizing as irrelevant the number of children fathered by defendant out of wedlock). Not only is the premise frivolous but the contention is admittedly stock (defense counsel

acknowledged having made the same argument nearly a hundred times, mostly in state court). Thus, the district judge was not obligated to respond, and an appellate claim arguing otherwise would be frivolous. *See United States v. Gary*, 613 F.3d 706, 709 (7th Cir. 2010); *United States v. Young*, 590 F.3d 467, 474 (7th Cir. 2009).

Last, counsel concludes, and we agree, that a challenge to the reasonableness of Davenport's prison sentence would be frivolous. A sentence within the guidelines range is presumed to be reasonable, *see Rita v. United States*, 551 U.S. 338, 350–51 (2007); *United States v. Aslan*, 644 F.3d 526, 531–32 (7th Cir. 2011), and counsel has not identified a basis to disturb that presumption. The district court meaningfully addressed the factors listed in 18 U.S.C. § 3553(a), including the need to deter Davenport from committing future crimes, the defendant's failure to stay employed, and the threat that his possession and use of guns poses to Danville—a community already struggling with shootings and gang violence.

The motion to withdraw is GRANTED, and the appeal is DISMISSED.