In the

# United States Court of Appeals
## For the Seventh Circuit

———————

No. 06-4147

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

OZIEL MARTINEZ,

*Defendant-Appellant.*

———————

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 04 CR 937-1—**James B. Moran**, *Judge*.

———————

ARGUED NOVEMBER 9, 2007—DECIDED MARCH 27, 2008

———————

Before CUDAHY, RIPPLE, and ROVNER, *Circuit Judges*.

ROVNER, *Circuit Judge*. After coordinating several shipments of cocaine and marijuana from Texas to Chicago, Illinois, Oziel Martinez was arrested and charged with one count of conspiracy to possess with intent to distribute cocaine and marijuana, 21 U.S.C. §§ 846, 841(a)(1), and one count of possession with intent to distribute cocaine, *id.* § 841(a)(1). He pleaded guilty to both charges, and the district court sentenced him to a total of 210 months' imprisonment. On appeal Martinez argues that the sentencing court erred in finding that he managed or supervised the conspiracy, *see* U.S.S.G. § 3B1.1(c), and

also failed to address his arguments for a lower prison sentence. We affirm the judgment.

Martinez worked for a drug-trafficking organization centered in Texas. In mid-2004 he recruited codefendant Andres Macias to accept deliveries at a Chicago warehouse and unload the drugs from hidden compartments in semi-trailers. In September 2004 Martinez coordinated the first two deliveries: 90 kilograms of cocaine and 767 kilograms of marijuana. Martinez telephoned from Texas and instructed Macias to prepare the warehouse and buy a prepaid cell phone that Martinez could identify as the recipient's number on the bill of lading for the trailer containing the marijuana. He also told Macias to go to Midway Airport and pick up his brother, codefendant Adan Martinez, who was flying in from Texas to oversee the unloading of the two shipments. Martinez then hired at least one of the drivers for the two loads and supervised the loading of both shipments. The cocaine shipment arrived safely in Chicago and was unloaded at the warehouse by Macias, Adan Martinez, and codefendant Santos Flores, whom Macias recruited. The marijuana did not make it to Chicago, however, because authorities stopped the truck in downstate Illinois. The police left a voice mail at the number on the bill of lading, prompting Macias to alert Martinez that the shipment had been intercepted. Martinez then instructed Macias to take his brother to the bus station for the return trip to Texas.

In October 2004 Martinez coordinated another shipment of cocaine—this time, 107 kilograms—destined for Macias's warehouse. Unbeknownst to Martinez or his codefendants, the Drug Enforcement Administration had discovered the hidden compartment in the trailer used for this shipment and installed a tracking device.

After the loaded truck had left a warehouse in Texas, agents stopped it and found the cocaine. The driver (the same one who delivered the previous cocaine shipment) agreed to cooperate and told the agents that he was transporting the drugs for Martinez. The agents replaced the cocaine with 100 kilograms of counterfeit cocaine, and the driver continued on to Chicago. Meanwhile, Martinez again had instructed Macias to prepare the warehouse for the delivery and told him to meet the plane when he flew into Chicago to oversee the unloading. When Martinez, Macias, and Flores began unloading the bogus cocaine from the hidden compartment, DEA agents arrested them.

Martinez entered blind guilty pleas in June 2006. The probation officer who prepared the presentence investigation report set the base offense level at 38 based on the amount of cocaine and marijuana. *See* U.S.S.G. § 2D1.1 (2005). The probation officer then added three levels for managing or supervising a conspiracy involving five or more people, *see id.* § 3B1.1(b) (2005), and subtracted three levels for acceptance of responsibility, *see id.* § 3E1.1 (2005). The leadership adjustment would make Martinez ineligible for a "safety valve" reduction. *See* 18 U.S.C. § 3553(f); U.S.S.G. §§ 5C1.2(a)(4), 2D1.1(b)(7) (2005). The resulting offense level of 38 coupled with Martinez's lack of criminal history yielded a guidelines imprisonment range of 235 to 293 months.

At sentencing Martinez objected to the recommended leadership adjustment. He argued that he was not a manager or supervisor and instead was a "low-level independent contractor" without authority over his codefendants. Therefore, he argued, he should not receive a three-level upward adjustment under § 3B1.1(b)

and should be eligible for the safety valve. Martinez also argued that the factors set out in 18 U.S.C. § 3553(a) warranted a sentence below the guidelines range—down to the statutory minimum of 10 years if he was not eligible for a lower term under the safety valve. He principally argued that a lower sentence was warranted because of the harshness of being confined in pretrial detention for almost two years without—by his account—treatment for a cataract and an ulcer. (During his detention Martinez had complained to the district court that he needed cataract surgery and was told by the court that the marshals service would arrange for the elective procedure if Martinez paid for it. Martinez said nothing to the court about having an ulcer.) He also argued that a lower sentence was warranted because he was a 39-year-old father without any criminal history, *see* 18 U.S.C. § 3553(a)(1); he would be near 50 at the end of the statutory minimum and, according to research, at less risk of recidivism, *see id.* § 3553(a)(2)(C); and he could benefit society by being close to his wife and children, *see id.* § 3553(a)(5)(A). Finally, he pointed out that two of his codefendants would likely get lower sentences even though at least one of them had supervised another participant. *See id.* § 3553(a)(6).

The district court found that Martinez was a manager or supervisor of the conspiracy. The court reasoned, however, that Martinez should receive an increase of just two levels, *see* U.S.S.G. § 3B1.1(c) (2005), because his role involved supervising the delivery logistics, which, the court thought, involved only two other people. That change from the presentence report lowered the total offense level to 37 and the guidelines range to 210 to 262 months. In selecting a term at the low end but not below

the range, the court singled out the seriousness of the crime and noted that Martinez would be able to have cataract surgery while imprisoned.

On appeal Martinez first argues that the district court erred in finding that he was a manager or supervisor. This finding, he contends, led to an erroneous two-level increase under § 3B1.1(c) and made him ineligible for the safety valve.[1] We review the court's finding for clear error. *See United States v. Johnson*, 489 F.3d 794, 796 (7th Cir. 2007); *United States v. Blaylock*, 413 F.3d 616, 618 (7th Cir. 2005).

The district court did not commit error. Martinez coordinated three substantial shipments of drugs. He hired at least one of the two drivers, he supervised the loading of all three trailers, he recruited Macias to recover the drugs from the hidden compartments when the trucks arrived in Chicago, and he commanded Macias to attend to details like preparing the warehouse for deliveries, buying a cell phone, and picking up Martinez and his brother from the airport. Orchestrating or coordinating activities performed by others makes a particular defendant a manager or supervisor. *See United States v. Skoczen*,

---

[1] Martinez additionally contends that, in light of *Cunningham v. California*, 127 S. Ct. 856 (2007), the sentencing court was required to submit the question of his role in the offense to a jury to be decided by proof beyond a reasonable doubt. We have rejected this reading of *Cunningham.* That decision does not affect the remedial majority's holding in *United States v. Booker*, 543 U.S. 220 (2005), that guidelines issues are to be decided by the sentencing court under a preponderance standard. *United States v. Roti*, 484 F.3d 934, 937 (7th Cir. 2007); *see also United States v. Savage*, 505 F.3d 754, 764 (7th Cir. 2007).

405 F.3d 537, 550 (7th Cir. 2005); *United States v. Carrera*, 259 F.3d 818, 827 (7th Cir. 2001). Martinez's activities easily place him in this category, and his assertion that he was just a "middleman" between the drug supplier and Macias is without merit. *Cf. United States v. Vargas*, 16 F.3d 155, 160 (7th Cir. 1994) (holding that arranging logistics of drug deliveries in addition to "supplying drugs and negotiating the terms of their sale" may justify finding that defendant was a supervisor or manager). Indeed, Martinez received a break when the district court increased his offense level by just two instead of three levels; a defendant who acts as a manager or supervisor in a criminal activity involving at least four other participants should receive a three-level increase even if he managed or supervised just one of the participants. *See United States v. Gallardo*, 497 F.3d 727, 739 (7th Cir. 2007); *Blaylock*, 413 F.3d at 619-21.

Martinez also contends that the district court failed to consider his arguments for a lower sentence. Most significantly, he says, the court refused to address his assertion that the lack of treatment for his cataract while he was in pretrial detention warranted a lower sentence. But in fact the sentencing court acknowledged and rejected this contention when it noted that Martinez could have surgery shortly after he arrived in his designated prison to serve his sentence. Moreover, none of the § 3553(a) factors make pretrial detention or the conditions of that detention a relevant consideration, *see United States v. Ramirez-Gutierrez*, 503 F.3d 643, 646 (7th Cir. 2007), and even if unusually harsh conditions could warrant a lower sentence, the conditions Martinez describes are not in that category.

Apart from the conditions of his pretrial confinement, Martinez does not point to any other factor that, in his

view, should have been addressed by the sentencing court but was not. Instead, Martinez simply declares that the court did not address any of the § 3553(a) factors. We reject this view of the record. All the district court was required to do was *consider* the factors listed in § 3553(a) and *address* explicitly any substantial arguments Martinez made. *See United States v. Acosta*, 474 F.3d 999, 1003 (7th Cir. 2007); *United States v. Cunningham*, 429 F.3d 673, 678 (7th Cir. 2005). "[S]tock arguments" like those Martinez made about his family situation and lack of criminal history are precisely the types of routine contentions "that a sentencing court is certainly free to reject without discussion." *United States v. Tahzib*, 513 F.3d 692, 695 (7th Cir. 2008). The district court noted that Martinez was part of an organized operation that trafficked in substantial amounts of drugs, and that he was not "a mule hired for a one-shot transaction." That is a sufficient explanation for the sentence. *See United States v. Laufle*, 433 F.3d 981, 987 (7th Cir. 2006); *United States v. Dean*, 414 F.3d 725, 729 (7th Cir. 2005)*; United States v. George*, 403 F.3d 470, 472-73 (7th Cir. 2005). The court was not required to say more.

For the foregoing reasons, we AFFIRM the judgment of the district court.