NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois  60604**

Argued March 2, 2010
Decided April 1, 2010

**Before**

DIANE P. WOOD, *Circuit Judge*

ANN CLAIRE WILLIAMS, *Circuit Judge*

DAVID F. HAMILTON, *Circuit Judge*

No. 09-3365

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>    *Plaintiff-Appellee*, | Appeal from the United States District<br>Court for the Southern District of Illinois. |
| *v.* | Nos. 09 CR 40023-001-JPG |
| MARCIAL RAMIREZ-SILVA, a/k/a<br>ALVARO TORRES-VALENCIA,<br>    *Defendant-Appellant*. | J. Phil Gilbert,<br>*Judge.* |

**O R D E R**

Marcial Ramirez-Silva pleaded guilty to being in the United States without permission after a prior removal, 8 U.S.C. § 1326(a). The district court sentenced him to 46 months in prison, the bottom of the guidelines range. He argues on appeal that the court failed to address his proposed bases for an even lower sentence. We affirm.

In March 2009, a deputy sheriff in Effingham County, Illinois, pulled over Ramirez-Silva in a routine traffic stop. Ramirez-Silva provided a Mexican identification card with the name "Alvaro Torres-Valencia," one of his several aliases. He admitted being in the country illegally, as did his two passengers. Ramirez-Silva was arrested and turned over to immigration authorities, who discovered his true identity.

Federal authorities also learned that he had been convicted in the Southern District of New York in 2007 of conspiracy to transport illegal aliens from Arizona to New York. He was sentenced to a term of 12 months and one day in prison and 3 years' supervised release. He completed his prison sentence in October 2007 and was removed to Mexico in January 2008. He was still on supervised release at the time of his arrest in this case.

The probation officer calculated a base offense level of 8, see U.S.S.G. § 2L1.2(a), and added 16 because Ramirez-Silva had been removed following a conviction for alien smuggling, *id.* § 2L1.2(b)(1)(A)(vii). After a 3-level reduction for acceptance of responsibility, *id.* § 3E1.1, his total offense level was 21. With a criminal history category of III, his guidelines imprisonment range was 46 to 57 months.

Ramirez-Silva filed objections and a sentencing memorandum in response to the presentence report. In his objections he asserted that (1) the statutory maximum should be 2 years instead of the 20 noted in the presentence report, and (2) § 2L1.2 is "flawed" because it lacks empirical support and should be ignored by the district court. In his memorandum, Ramirez-Silva discussed the sentencing factors in 18 U.S.C. § 3553(a). He mentioned that he is a father of three and "remains close to his parents and siblings," that he faces potential deportation and revocation of supervised release, and that his one conviction is already accounted for in criminal history points and does not warrant the "profoundly severe" 16-level increase under § 2L1.2(b)(1)(A)(vii). He also noted that the Southern District of Illinois does not have a fast-track program:

> Section 5K3.1 states that upon motion of the government, the Court may depart downward not more than four-levels pursuant to an early disposition program authorized by the U.S. Attorney General and the U.S. Attorney in a particular district. Unfortunately, an early disposition program or 'fast track' program is not available in this district. However, the Seventh Circuit has determined that:

> > The Supreme Court's decision in *Kimbrough v. United States . . .* has rekindled debate about whether the absence of a fast track program can be a factor in the choice of sentence.

> See *United States v. Valdez-Martinez*, 295 F.App'x. 832, 835 (7th Cir. 2008).

In an addendum to the presentence report, the probation office addressed the two objections but did not discuss the arguments in the sentencing memorandum concerning § 3553(a).

At sentencing the district court overruled the two objections and adopted the guidelines calculations in the presentence report. Ramirez-Silva, through counsel, then discussed his § 3553(a) arguments, emphasizing his disagreement with the 16-level increase, his limited criminal history, and his lack of access to a fast-track program:

> Additionally, Your Honor, the Court is now free to consider the lack of the fast track program in this district. And the recent Seventh Circuit case, Valdez-Martinez, the Seventh Circuit has now recognized this is a valid factor for this Court to consider. There are numerous districts across the country who, some of them, based upon my reading of the case, have only one reentry case a year. And yet they have a fast track program.

> Because it is not available here, defendants in this district are subject to sentencing disparity. They do not have the benefit of that. I think that's a very valid consideration for the Court.

In allocution Ramirez-Silva personally addressed the court and added that "[t]here's no work in Mexico, and it's very hard to feed my family." That statement prompted the court to reply that "[w]ork may be tough in Mexico," but in the United States "we're almost at a low tolerance for people who come into this country illegally and then commit crimes." The court went on to express the importance of adequately deterring Ramirez-Silva from returning to this country and the need for the sentence to protect the public and reflect the seriousness of the offense. The court then imposed a bottom-of-the-range sentence of 46 months in prison (though with credit for one month served in ICE detention).

On appeal Ramirez-Silva does not dispute the district court's guidelines calculations, and because his prison term is within the resulting range, the sentence is presumed to be reasonable. See *United States v. Omole*, 523 F.3d 691, 696 (7th Cir. 2008); *United States v. Mykytiuk*, 415 F.3d 606, 608 (7th Cir. 2005). According to Ramirez-Silva, however, the court did not adequately address several of his arguments in favor of greater leniency.

Ramirez-Silva first asserts that the district court did not respond to his contention that a lower sentence was warranted because he is the father of three, because he is close to his mother who lives in Mexico, and because he came to this country to find work to feed his family. A sentencing court is required to consider the § 3553(a) factors and to address any substantial argument the defendant makes, *United States v. Martinez*, 520 F.3d 749, 753 (7th Cir. 2008); *United States v. Sainz-Preciado*, 566 F.3d 708, 716 (7th Cir. 2009), but the court need not discuss every factor and may reject "stock arguments" without any discussion at all, *United States v. Young*, 590 F.3d 467, 474 (7th Cir. 2009); *United States v. Mendoza*, 576 F.3d

711, 721 (7th Cir. 2009); *Martinez*, 520 F.3d at 753; *United States v. Tahzib*, 513 F.3d 692, 694-95 (7th Cir. 2008); *United States v. Cunningham*, 429 F.3d 673, 678 (7th Cir. 2005). Ramirez-Silva's contention about his family situation and his purported reason for being in the United States unlawfully are precisely the types of stock arguments that a sentencing judge is free to reject without comment. *Young*, 590 F.3d at 467**;** *Martinez*, 520 F.3d at 753; *Tahzib*, 513 F.3d at 694-95. The representation that work was unavailable in Mexico and that Ramirez-Silva was having difficulty feeding his family constituted the bulk of his argument about his family but did nothing to distinguish him from other defendants. Nor did the representation that he is close to his mother.

Ramirez-Silva next argues that the district court should have explicitly addressed his contention that § 2L1.2 is "flawed."  He no longer contends that § 2L1.2 could be ignored in calculating the guidelines range; rather, he insists that the court, as an exercise of its § 3553(a) discretion, should have evaluated whether applying the guideline to him would lead to an unreasonable sentence. And it would have, says Ramirez-Silva, because his one conviction not only increased the statutory maximum under § 1326(b) from 2 years to 20, but also yielded a 16-level increase under § 2L1.2(b)(1)(A)(vii) as well as criminal history points.

An argument that § 2L1.2 leads to "an unsound sentence in the particular circumstances of the case" might not be frivolous, see *United States v. Aguilar-Huerta*, 576 F.3d 365, 367-69 (7th Cir. 2009), but despite the window dressing, that is not the argument Ramirez-Silva made. Once again he failed to explain to the district court how his circumstances were distinguishable from every other defendant who is subject to the guideline. Ramirez-Silva stated at sentencing that "he has no other priors. He has no crimes of violence. He has no drug charges. He has nothing of that nature. He is simply one of those poor souls who comes from a poor country and came here to work."  But § 2L1.2(b)(1)(A)(vii) specifically requires a 16-level increase for any defendant with a prior alien-smuggling conviction, so the district court had no reason to address the absence of convictions for drug offenses or violent crimes. And the court already had stated that it was not going to ignore the guideline:

> I think it's consistent with what this Court's ruled before in other similar cases. And if there's going to be a change in the guidelines, the Sentencing Commission or the Court of Appeals is going to have to do it. But in reviewing . . . the applicable guidelines and the statute, the Court finds that the presentence report, the calculation of the 16-level enhancement, is an appropriate application here.

Ramirez-Silva was not making an argument that the guideline was particularly unsuited to his personal circumstances; he was arguing that the guideline is "flawed" and should not ever be given effect. The sentencing court was under no obligation to even consider that argument. See *Aguilar-Huerta*, 576 F.3d at 367-68.

Ramirez-Silva next argues that the district court failed to consider potential sentencing disparities created by the lack of a fast-track program in the Southern District of Illinois, see 18 U.S.C. § 3553(a)(6). He notes that U.S.S.G. § 5K3.1 allows the government to move for a four-level guideline reduction "pursuant to an early disposition program" that exists in other districts.

Before *Kimbrough v. United States*, 552 U.S. 85 (2007), we had held that a sentence was not unreasonable solely because it was imposed in a jurisdiction that did not have a fast-track program. See *United States v. Pacheco-Diaz*, 506 F.3d 545, 552-53 (7th Cir. 2007); *United States v. Galicia-Cardenas*, 443 F.3d 553, 555 (7th Cir. 2006); *United States v. Martinez-Martinez*, 442 F.3d 539, 542 (7th Cir. 2006). We have not evaluated whether *Kimbrough* compels another look at the issue, but other circuits have required defendants asking for a lower sentence on the basis of a purported fast-track "disparity" to establish that they are similarly situated to defendants in districts with a program and, factually, would have been eligible for fast-track relief. See United *States v. Gomez-Herrera*, 523 F.3d 554, 563 (5th Cir. 2008); *United States v. Vargas*, 477 F.3d 94, 100 (3d Cir. 2007), *overruled on other grounds by United States v. Arrelucea-Zamudio*, 581 F.3d 142, 149 (3d Cir. 2009).

Ramirez-Silva stated at sentencing only that these programs exist in other districts, but he did not assert that he would have met the eligibility criteria for even one program of those which exist. Counsel failed to explain, for example, (1) the minimum eligibility thresholds set out by United States Attorneys' offices with approved fast-track programs, (2) whether the two months that Ramirez-Silva waited after his indictment before pleading guilty would have put him on a fast-track in any district, (3) whether fast-track defendants must waive their right to appeal, (4) whether there are differences among fast-track districts as to the amount of sentencing consideration given, and (5) whether Ramirez-Silva met any disqualifying criteria (such as his prior conviction for alien smuggling or his violation of supervised release). See Paul W. Hahn, *Responding to the Fast-Track Disparity Argument*, 54 U.S. ATT'YS' BULL. 11, 15-16 (2006) (discussing how prosecutors confronted with a fast-track disparity argument can initially determine whether a defendant would qualify for fast-track disposition in a fast-track district). The district court properly disregarded the argument because Ramirez-Silva never explained or even asserted that he would be eligible for a fast-track reduction in *any* district.

Finally, Ramirez-Silva argues that the district court failed to consider the fact that he is likely to face revocation of his supervised release and removal after his release from prison. He asserts that consideration of future reimprisonment and removal was required to insure his punishment is not greater than necessary, see 18 U.S.C. § 3553(a)(1), (a)(2)(A-C). These are more examples of stock arguments that are routinely made to sentencing courts. Every defendant convicted under § 1326(a) could argue for mitigation based on his inevitable removal after release from imprisonment, and, as such, the contention was not substantial. See *Mendoza*, 576 F.3d at 722. Moreover, the district court was clearly aware of the possibility of deportation and mentioned it several times at sentencing. As for the possibility of revocation, any period of reimprisonment would be part of the penalty for the original alien-smuggling offense and is of little relevance to punishment for the current offense. See *United States v. Johnson*, 529 U.S. 694, 700-01 (2000).

AFFIRMED.