In the

# United States Court of Appeals

## For the Seventh Circuit

———————

No. 23-1976

UNITED STATES OF AMERICA,

*Plaintiff-Appellee.*

*v.*

TRAVIS MONTGOMERY,

*Defendant-Appellant.*

———————

Appeal from the United States District Court for the
Southern District of Indiana, Indianapolis Division.
No. 1:22CR00012-001 — **Tanya Walton Pratt**, *Chief Judge.*

———————

ARGUED MARCH 5, 2024 — DECIDED JUNE 24, 2024

AMENDED ON PETITION FOR REHEARING AUGUST 29, 2024

———————

Before SYKES, *Chief Judge*, and LEE and KOLAR, *Circuit Judges*.

PER CURIAM. Travis Montgomery pleaded guilty to distributing methamphetamine. At his sentencing hearing, the government proved that Montgomery had stowed the methamphetamine (as well as other drugs), cash, and drug trafficking paraphernalia in an off-site storage unit leased by his

sister. Finding that Montgomery had used the storage unit primarily to facilitate his drug operation, the district court added a two-level enhancement pursuant to § 2D1.1(b)(12) of the United States Sentencing Guidelines. *See* U.S.S.G. § 2D1.1(b)(12) (requiring two-level increase where a defendant "maintained a premises for the purpose of … distributing a controlled substance"). But because the present record falls short of establishing that a primary use of the storage unit was drug distribution, we vacate and remand to the district court for resentencing without regard to § 2D1.1(b)(12)'s enhancement.

## I

A confidential source for the Federal Bureau of Investigation contacted Montgomery in June 2021 to buy methamphetamine. On three occasions that month, Montgomery instructed the source to meet him in the parking lot of a storage unit facility. Montgomery then accessed a particular storage unit (which was leased by his sister) and sold the drugs to the source.

Investigators executed a search warrant on the unit in late June. They found small quantities of cocaine and heroin, about 3.5 pounds of methamphetamine, cash, equipment used for distribution such as a scale and bags, and Montgomery's state identification card.

Montgomery pleaded guilty to distribution of fifty or more grams of methamphetamine. 21 U.S.C. §§ 841(a)(1), (b)(1)(A)(viii). The Presentence Investigation Report recommended a two-level enhancement for "maintain[ing] a premises for the purpose of manufacturing or distributing a controlled substance." U.S.S.G. § 2D1.1(b)(12).

Objecting to this enhancement, Montgomery cited a recent case, *United States v. Ford*, 22 F.4th 687, 695 (7th Cir. 2022), where we cautioned against applying the enhancement beyond its intended application. In *Ford*, the defendant had sold drugs out of a bedroom at a friend's home for a four-month period. *Id.* Although we affirmed the imposition of the enhancement given the particular circumstances there, we noted that it was a "borderline" case closer to the "outer limits of the enhancement's reach." *Id.* (citing *United States v. Zamudio*, 18 F.4th 557, 563 (7th Cir. 2021)). As Montgomery saw it, his month-long activities involving the storage unit fell well short of the "sustained period of time" the premises enhancement requires. *Id.* at 694 (quoting *United States v. Acosta*, 534 F.3d 574, 591 (7th Cir. 2008)). In addition, Montgomery also argued that our cases affirming the enhancement dealt almost exclusively with houses or homes, rather than storage units.

In support of the enhancement, the government presented the testimony of a federal investigator familiar with the case, who verified that the storage unit was in Montgomery's sister's name, that it had been accessed several times a day between May 30 and June 29 (according to the facility's records), and that video footage showed Montgomery entering the unit on three occasions. Furthermore, at the time of the search, the storage unit housed only the drugs, cash, drug-related items, Montgomery's ID card, as well as a set of automobile tires.

Based on these facts, the district court applied the two-level enhancement, finding that the storage unit qualified as a "premises" under § 2D1.1(b)(12), and that Montgomery had used it for the primary purpose of storing and distributing drugs. The enhancement boosted Montgomery's total offense level to 35. This offense level, combined with Montgomery's

criminal history category of VI (he was a career offender), yielded a guidelines range of 292 to 365 months' imprisonment. The court, however, noted an upcoming revision to the Sentencing Guidelines (concerning career offender status) that would drop Montgomery's criminal history category from VI to IV, *see* U.S. Sent'g Comm'n, *Adopted Amendments*, at 43–44 (effective Nov. 1, 2023), and decrease his guidelines range from 292 to 365 months to 235 to 293 months of imprisonment. (Had the premises enhancement not applied, his guidelines range with the revision would have been 188 to 235 months' imprisonment.) The court sentenced Montgomery to 235 months of imprisonment and five years of supervised release.

## II

On appeal, Montgomery challenges the application of the § 2D1.1(b)(12) enhancement. He argues that he lacked any possessory interest in the storage unit because he did not rent or own the unit, he did not control access to it, he did not make any drug sales in it, and his use of it was for only a short time. Noting that the enhancement intended to stop people from using homes for the drug trade, he adds that he did not use the storage unit for the "purpose" of distributing drugs.

The sentencing enhancement under § 2D1.1(b)(12) provides for a two-level increase to the offense level if the defendant (1) "maintained" (2) a "premises" (3) for the "purpose" of manufacturing or distributing drugs. This court reviews the district court's legal interpretation of the Sentencing Guidelines *de novo* and its findings of fact for clear error. *United States v. Flores-Olague*, 717 F.3d 526, 530 (7th Cir. 2013). A district court need find only by a preponderance of the evidence

facts sufficient to support an enhancement. *United States v. Griffin*, 76 F.4th 724, 751 (7th Cir. 2023).

To start, we agree with the district court that the storage unit constituted a "premises" under the enhancement. Under Application Note 17 to the enhancement, a "premises" can be "a building, room, or enclosure." U.S.S.G. § 2D1.1 cmt. n.17. We have yet to apply this broad language to storage units, but we see no reason a storage unit would not qualify as a "room" or "enclosure."

We are less certain, based on this record, that Montgomery sufficiently "maintained" the storage unit for the purposes of § 2D1.1(b)(12). It is true that the Guidelines and *Ford* instruct district courts to consider the defendant's possessory interest in the premises and "the extent to which [the defendant] controlled access and activities on the premises." *Ford*, 22 F.4th at 695; *see also* U.S.S.G. § 2D1.1 cmt. n.17. And here, although Montgomery did not lease the storage unit himself, the record shows that he could access it whenever he liked.

But while control is an important factor, it is not the only one. *See* U.S.S.G. § 2D1.1 cmt. n.17 (noting that control is "[a]mong the factors" a court should consider in determining whether a defendant "maintained" the premises). Indeed, we have consistently stated that to "maintain" a drug premises, a defendant must exercise control and use the premises for drug operations "for a sustained period of time." *See United States v. Evans*, 826 F.3d 934, 938 (7th Cir. 2016) (quoting *Acosta*, 534 F.3d at 591). And, although the § 2D1.1(b)(12) inquiry is fact-intensive and individual circumstances will differ from case to case, to date, two to three months is the shortest duration of time where we have approved the enhancement's application. *See, e.g.*, *Zamudio*, 18 F.4th at 563

(defendant stored drugs in his garage for two to three months); *Ford*, 22 F.4th at 695 (defendant's usage of rear bedroom for only four months is "closer to the outer limits of the enhancement's reach").

But we need not decide the sufficiency of a one-month period today. To satisfy § 2D1.1(b)(12), the government must also demonstrate by a preponderance of the evidence that Montgomery maintained the storage unit for the "purpose of manufacturing or distributing a controlled substance." U.S.S.G. § 2D1.1(b)(12); *see also Evans*, 826 F.3d at 938. Although distributing drugs need not be the sole purpose for which Montgomery maintained the unit, it "must be one of the defendant's primary or principal uses for the premises, rather than one of the defendant's incidental or collateral uses for the premises." U.S.S.G. § 2D1.1(b)(12) cmt. n.17; *see also United States v. Beechler*, 68 F.4th 358, 369 (7th Cir. 2023); *Flores-Olague*, 717 F.3d at 531.

Even assuming, for the sake of argument, that a month-long period is enough to "maintain" a premises under § 2D1.1(b)(12), the record falls short of indicating that Montgomery was using the storage unit for the primary purpose of distributing drugs during the month in question. As the government points out, we have held that daily use of a premises for drug distribution is enough to trigger the enhancement. *See Flores-Olague*, 717 F.3d at 533. Here, however, the government presented only three occasions when Montgomery accessed the storage unit in connection with his drug trade. We also know from the facility's records that someone accessed the unit multiple times a day between May 30 and June 11, although we don't know who accessed it (whether Montgomery or his sister) or for what purpose. Perhaps additional

factfinding might have shown that it was Montgomery who utilized the unit on each of those occasions to further his drug operation. But as it stands, the record is unclear. We know only that Montgomery accessed the unit to carry out drug transactions three times and that an unidentified individual accessed the unit many more times during the same period for some unknown purpose. And, although courts are not required to employ a "simple balancing test" comparing the frequency of lawful and unlawful activities, *United States v. Contreras*, 874 F.3d 280, 284 (7th Cir. 2017), given the facts we do have, the government needed to show more than three transactions tied to the storage unit in a one-month period to satisfy its burden to trigger the two-level enhancement under § 2D1.1(b)(12). And so, we remand this case to the district court.

As for the scope of the remand, generally speaking, we do not grant the government, which bears the burden of proof to establish the applicability of a sentencing enhancement, a second chance to present evidence in support of that enhancement on remand. *See United States v. Noble*, 367 F.3d 681, 682 (7th Cir. 2004); *United States v. Wyss*, 147 F.3d 631, 633 (7th Cir. 1998). But this is not an inviolable rule. For example, in *United States v. Sumner*, we held that the government could introduce new evidence on remand that related to issues the defendant had not raised at the initial sentencing, but that we considered on plain error review. 325 F.3d 884, 888–89 (7th Cir. 2003). And, in *United States v. Hagenow*, we allowed the government to present new evidence on remand when intervening case law rejected the form of proof the government had offered at the original sentencing. 487 F.3d 539, 542 (7th Cir. 2007). *See also United States v. Jordan*, 742 F.3d 276, 282 (7th Cir. 2014).

This case, however, does not warrant an exception to the general rule, because "the scope of acceptable evidence was clear at the time the government initially failed to carry its burden of proof." *Id.* at 542. As such, we will not allow it on remand to "submit new evidence in a belated effort to carry its burden." *United States v. Gibbs*, 26 F.4th 760, 767 (7th Cir. 2022) (quoting *Noble*, 367 F.3d at 682).

Accordingly, we VACATE the judgment and REMAND for further proceedings consistent with this opinion.