In the

# United States Court of Appeals

## For the Seventh Circuit

_____

No. 24-2239

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

ZACHARY D. BARNES,

*Defendant-Appellant.*

_____

Appeal from the United States District Court for the
Northern District of Indiana, Fort Wayne Division.
No. 1:22-cr-00009-HAB-SLC-1 — **Holly A. Brady**, *Chief Judge.*

_____

ARGUED APRIL 3, 2025 — DECIDED JUNE 26, 2025

_____

Before HAMILTON, BRENNAN, and SCUDDER, *Circuit Judges.*

HAMILTON, *Circuit Judge.* Zachary Barnes pleaded guilty to conspiracy to distribute methamphetamine and to possess it with intent to distribute in violation of 21 U.S.C. § 846. At sentencing, the district court applied a two-level enhancement under section 3B1.1(c) of the Sentencing Guidelines for Barnes' role as a manager or supervisor of the scheme. Because of the role enhancement, Barnes became ineligible for the so-called "safety-valve" provision in 18 U.S.C. § 3553(f),

which offers a path for some non-violent drug offenders with minimal criminal histories to avoid mandatory minimum sentences. Barnes was sentenced to the mandatory minimum ten years in prison. He now appeals, challenging both the role enhancement and the denial of safety-valve relief.

We affirm. In applying the role enhancement under section 3B1.1(c), the district court credited and relied on testimony from a co-conspirator, Marquese Neal, that was corroborated by other evidence. Neal's testimony showed that Barnes played a central role in the conspiracy. He negotiated sales, coordinated logistics, supplied methamphetamine, directed his co-conspirator to make deliveries, collected proceeds, and paid him in marijuana. This conduct fits squarely within the scope of U.S.S.G. § 3B1.1(c). The district court did not err in applying the enhancement. Because Barnes acted as a supervisor, he was also ineligible for safety-valve relief.

I.   *Factual and Procedural History*

Federal agents enlisted the help of a confidential source to investigate a drug trafficking conspiracy in Fort Wayne, Indiana. In February 2021, at the direction of law enforcement, the source contacted Barnes to purchase methamphetamine. When the source arrived at the agreed-upon location, Barnes messaged that he was on his way outside. Instead, Marquese Neal approached the source, exchanged drugs for money, and then departed with Barnes.

In September 2021, law enforcement arranged a second controlled buy using the same source. The transaction mirrored the earlier one: Barnes selected the meeting location, and Neal delivered the methamphetamine, met with Barnes, and departed in Barnes' vehicle. Later that day, the source

texted Barnes to ask why he had not personally participated in the handoff. Barnes replied that he had been shopping in a nearby store. The source also asked about buying a pistol. Barnes responded that he could provide one for $500. The next day, Barnes arranged the sale, met the source at the agreed-upon location, and handed her a firearm concealed in a video game box.

In the ensuing weeks, Barnes continued coordinating sales with the source, frequently dispatching Neal to complete the transactions. On one occasion, the source got into Barnes' car, where Neal delivered methamphetamine under Barnes' direction. During this exchange, Neal gave the source his phone number, saying he could be contacted for marijuana, guns, and fentanyl. When the source asked Barnes whether she should contact Neal directly, Barnes responded that she could, but he added that Neal would likely report back to him if the source asked for guns or drugs. Shortly after that, Barnes quoted the source a bundled price of $2,050 for some methamphetamine and a pistol, but he later lowered the price. On December 13, 2021, agents observed a blue Hyundai leaving Barnes' home. Neal exited the vehicle at the deal location and handed the source both a gun and methamphetamine.

In February 2022, Barnes and the source arranged another deal for methamphetamine and a pistol. Officers saw Neal and an unidentified accomplice arrive at the meeting location. Neal approached the source's vehicle and exchanged the drugs. When the source asked about a gun she had previously discussed with Barnes, Neal responded that Barnes had been unable to secure it in time. After the exchange, officers watched Neal drive back to Barnes' home. Law enforcement

later searched Barnes' home pursuant to a warrant and found methamphetamine, marijuana, and ammunition.

Barnes pleaded guilty to one count of conspiracy to distribute methamphetamine and to possess it with intent to distribute in violation of 21 U.S.C. § 846. Other charges in the indictment were dismissed. The Sentencing Guideline calculations in the final version of the Presentence Investigation Report (PSR) started with a base offense level of 32, holding Barnes responsible for at least 150 grams but less than 500 grams of methamphetamine. The offense level was increased by two levels for possession of a dangerous weapon and by two more levels under section 3B1.1(c) for Barnes' role as an organizer or supervisor. Barnes also received a three-level reduction for acceptance of responsibility, resulting in a total offense level of 33. The leadership role enhancement under section 3B1.1(c) also meant Barnes would not be eligible for safety-valve relief under 18 U.S.C. § 3553(f). With a criminal history category of I, Barnes' guideline range was 135 to 168 months in prison, and he was subject to a statutory mandatory minimum sentence of ten years (120 months) in prison.

Barnes objected to the role enhancement and the denial of safety-valve relief. He requested an evidentiary hearing. At that hearing, Neal and a case agent testified, and the government introduced text messages and video evidence from the controlled buys. Neal testified that he had known Barnes since high school and worked for Barnes' lawn care business. He further testified that Barnes paid him with marijuana for delivering drugs as Barnes directed. For each transaction, Barnes arranged logistics with the source, supplied the drugs, and sent Neal to complete the exchange. Neal testified that he

transferred the proceeds to Barnes and delivered drugs only at Barnes' direction.

Barnes challenged Neal's credibility, citing inconsistencies in his testimony, the absence of corroborating text messages, and conflicting accounts about whether Neal had co-signed a car loan. The district court, however, found Neal's testimony credible, explaining its findings in a written memorandum. *United States v. Barnes*, No. 1:22-CR-9, 2024 WL 2105487, at *5 (N.D. Ind. May 10, 2024). Although the court acknowledged some minor discrepancies, it emphasized that Neal's testimony was consistent on key points and supported by the broader record. *Id.* at *4. The court overruled Barnes' objections, found that Barnes acted as a supervisor in the conspiracy for purposes of the role enhancement, and found him ineligible for safety-valve relief. *Id.* at *5. The court later sentenced Barnes to the mandatory minimum ten years (120 months) in prison. On appeal Barnes argues that he did not qualify for the role enhancement and that he should be deemed eligible for safety-valve relief.[1]

II. *Analysis*

We review de novo the district court's application of the Sentencing Guidelines, and we review its underlying factual findings for clear error. *United States v. Flores-Olague*, 717 F.3d 526, 530 (7th Cir. 2013). This appeal turns on the clear-error standard. "[W]hen a district court chooses between two permissible inferences from the evidence, the factual findings cannot have been clearly erroneous." *United States v. Cruz-*

---

[1] We thank attorney Robert J. Palmer and Notre Dame law student Alesondra Cruz for their able representation of Mr. Barnes on appeal by appointment under the Criminal Justice Act.

*Rea*, 626 F.3d 929, 938 (7th Cir. 2010). More to the point here, "where a sentencing challenge boils down to a credibility decision, … our review is especially deferential to the district judge's assessment of the testimony." *United States v. Etchin*, 614 F.3d 726, 738 (7th Cir. 2010).

A.  *The District Court's Credibility Determination*

Before addressing whether Barnes qualified for the leadership enhancement under section 3B1.1(c), we begin with the district court's finding that Neal testified credibly about Barnes' role in the drug distribution. We afford that determination "great deference." *United States v. Lovies*, 16 F.4th 493, 497 (7th Cir. 2021). Credibility findings are not unassailable, but we have said over and over that a district judge, having observed the witness firsthand, is in the best position to assess credibility. E.g., *United States v. Salyers*, 160 F.3d 1152, 1163 (7th Cir. 1998). Determinations of witness credibility "can virtually never be clear error." *United States v. Ortiz*, 431 F.3d 1035, 1039 (7th Cir. 2005) (internal quotation marks omitted), quoting *United States v. Blalock*, 321 F.3d 686, 690 (7th Cir. 2003). "Discrepancies or inconsistent prior statements do not, as a matter of law, render a witness's testimony incredible." *United States v. Hernandez*, 544 F.3d 743, 747 (7th Cir. 2008).

This record supports the district court's credibility determination. Neal testified consistently that Barnes arranged the deals, supplied the drugs, directed the deliveries, and collected the proceeds. The court was entitled to find this consistency persuasive. See *United States v. Zehm*, 217 F.3d 506, 514–15 (7th Cir. 2000) (upholding credibility determination because witness's testimony was consistent with the testimony of other witnesses and defendant). Neal's account was further corroborated by text messages and video evidence

showing that Barnes negotiated prices, provided the drugs, and was either present or closely involved in every transaction.

Barnes argues that discrepancies in Neal's testimony—such as uncertainty about Barnes' supplier, the difference in weight between several ounces of methamphetamine and a handgun, or whether Neal co-signed a car loan—undermined his credibility entirely. But many witnesses contradict themselves or testify incorrectly about details. Sometimes the discrepancies are honest human errors that do not undermine the credibility of the core of their testimony. Sometimes they indicate an unreliable memory or dishonesty. To account for this reality, a trier of fact, including a sentencing judge, "may credit some portions of a witness's testimony while disregarding others." *United States v. Smith*, 674 F.3d 722, 734 (7th Cir. 2012).

In any event, the district court considered these discrepancies and still found Neal's testimony credible on key points. That determination was well within the court's judgment, particularly where the inconsistencies did not bear on the central question at issue—Barnes' role in the conspiracy. See *United States v. Freeman*, 691 F.3d 893, 900 (7th Cir. 2012) (upholding credibility finding despite "small inconsistencies" in witness's testimony about how often and in what manner defendant hid drugs because the "most important aspects of [the witness's] testimony were internally consistent"); cf. *Ray v. Clements*, 700 F.3d 993, 1013 (7th Cir. 2012) (district court clearly erred where it based its "'credibility' finding on nothing more than a string of speculative doubts, none of which were based on any competent contradictory evidence presented by the state"). The district court appropriately

distinguished between the inconsistent portions of Neal's testimony and those that were consistent and corroborated by independent evidence. It did not clearly err. With the district court's credibility determination in mind, we turn to the role enhancement.

B.  *The Role Enhancement*

Section 3B1.1 allows for sentencing enhancements based on a defendant's aggravating leadership role in the offense. If a crime involved five or more participants or was "otherwise extensive," a defendant receives a four-level enhancement if he was an "organizer or leader" of the scheme under section 3B1.1(a) or a three-level enhancement if he was a "manager or supervisor" under section 3B1.1(b). Central to this appeal, if the defendant was an "organizer, leader, manager, or supervisor" but the crime did not involve five or more participants and was not "otherwise extensive," a defendant receives a two-level enhancement under section 3B1.1(c).

The Sentencing Guidelines do not expressly define the terms "organizer," "leader," "manager," or "supervisor," but decades of case law have shaped their meaning. Sentencing courts can also look to the accompanying commentary, which provides a list of relevant factors including: the exercise of decision-making authority; the nature of the defendant's participation in the offense; the recruitment of accomplices; any claim to a larger share of the criminal proceeds; the degree of involvement in planning or organizing the offense; the overall scope and structure of the criminal activity; and the extent of control exercised over others. § 3B1.1 n.4. While those factors can provide a useful framework, no one factor is required for the enhancement to apply. *United States v. House*, 883 F.3d 720,

724 (7th Cir. 2018). Stated plainly, the inquiry seeks to "make a 'commonsense judgment about the defendant's relative culpability given his status in the criminal hierarchy.'" *United States v. Craft*, 99 F.4th 407, 414 (7th Cir. 2024), quoting *House*, 883 F.3d at 724. "A district court need find only by a preponderance of the evidence facts sufficient to support an enhancement." *United States v. Montgomery*, 114 F.4th 847, 850 (7th Cir. 2024).

The district court did not err in applying the two-level organizer or leader enhancement to Barnes. A section 3B1.1 enhancement requires some hierarchy among participants, *United States v. Weaver*, 716 F.3d 439, 444 (7th Cir. 2013), but it does not demand proof that the defendant explicitly gave orders. It may be sufficient if the defendant was "[o]rchestrating or coordinating activities performed by others," *United States v. Martinez*, 520 F.3d 749, 752 (7th Cir. 2008), or delegating tasks such as delivery or payment, *United States v. Sainz-Preciado*, 566 F.3d 708, 714 (7th Cir. 2009). That standard is readily satisfied on this record.

Evidence that the district court credited showed that Barnes brought Neal into the conspiracy and gave him marijuana in exchange for his services. We have recognized similar recruitment as a relevant factor in applying section 3B1.1 enhancements. In *Craft*, although we ultimately remanded on other grounds, we agreed with the district court's application of section 3B1.1(c). 99 F.4th at 414–15. We found it significant that the defendant had enlisted the help of his co-conspirators in the drug operation. *Id.* at 414. Similarly, in *United States v. Grigsby*, we upheld application of the supervisory role enhancement in part because the defendant had "initiated the scheme" and "played a leading role in recruiting the

coconspirators." 692 F.3d 778, 791 (7th Cir. 2012). And in *United States v. Watts*, we affirmed a section 3B1.1(c) enhancement where the defendant "recruited his wife to participate in the conspiracy." 535 F.3d 650, 660 (7th Cir. 2008). Barnes' recruitment of Neal reflected the kind of leadership and control that section 3B1.1 targets.

Barnes negotiated the terms of the drug sales and coordinated logistical details—conduct we have previously recognized as relevant under section 3B1.1(c). In *United States v. Fox*, we affirmed the enhancement despite "obvious conflicts" in testimony, deferring to the district court's credibility determinations. 548 F.3d 523, 529–30 (7th Cir. 2008). We upheld the district court's application of section 3B1.1(c) because the defendant had arranged the terms of the deals, set the times and places of the transactions, and dispatched a co-conspirator to complete them. *Id.* That conduct closely resembles Barnes' actions: he negotiated every deal, planned the logistical details, supplied the drugs, and either directed or personally transported Neal to the handoffs.

To show further the absence of error here, it is useful to compare a case where we reversed a section 3B1.1 enhancement. In *United States v. Vargas*, we found that the district court had clearly erred in applying the leadership enhancement despite evidence that Vargas had supplied drugs and negotiated terms. 16 F.3d 155, 160 (7th Cir. 1994). We recognized that Vargas' actions might, in some cases, support a role enhancement, but we ultimately concluded that his conduct fell short. The record lacked evidence that Vargas exercised authority over others or coordinated their efforts. He was not "principally responsible for arranging the logistics of cocaine deliveries or payments," a role that would have required him

to direct or manage the conduct of his coconspirators. *Id.* Our conclusion was reinforced by testimony showing that, when Vargas objected to a proposed delivery plan, his co-conspirators overruled him. *Id.*

The contrast between this case and *Vargas* is clear. In *Vargas*, the defendant occasionally supplied drugs and participated in negotiations. We found the role enhancement did not apply, though we suggested it might have been warranted if he had also arranged logistics. 16 F.4th at 160. Here, the record contains no evidence that anyone other than Barnes coordinated logistics, supplied methamphetamine, or negotiated terms. Indeed, when the source asked whether she could deal directly with Neal, Barnes told her in essence that Neal could not supply drugs or guns on his own. Neal, for his part, testified that his one-time offer to supply drugs and guns was not serious. Unlike in *Vargas*, Barnes was never overruled by others.

Barnes' claim that he and Neal operated as equal partners is not so compelling on this record that the district court clearly erred by rejecting it. Barnes points to a brief exchange during one recorded delivery in which Neal told the source that she could "hit him up" and that he would "work with" her on price. But isolated remarks during a single transaction do not outweigh the preponderance of the evidence in the record in this instance. Those comments by Neal are also consistent with the role of a subordinate acting under delegated authority. As the government notes, Barnes never told the confidential source that he had a partner or that someone else would be handling the sales—facts that support the district court's finding that Barnes maintained primary control over the operation.

Because Barnes recruited Neal, negotiated sales, arranged logistics, supplied methamphetamine, delegated delivery duties, and collected proceeds, the district court did not err in applying the section 3B1.1(c) enhancement. That enhancement also renders Barnes ineligible for safety-valve relief. See 18 U.S.C. § 3553(f)(4) (excluding from safety-valve relief a defendant who was an "organizer, leader, manager, or supervisor of others in the offense, as determined under the sentencing guidelines"); *United States v. May*, 748 F.3d 758, 761 (7th Cir. 2014) (defendant who "properly received the two-level adjustment under § 3B1.1" was ineligible for safety-valve relief as a matter of law). Accordingly, we need not—and do not—reach the parties' arguments regarding firearm possession and other aspects of eligibility for the safety valve.

AFFIRMED.